**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HENSLEY MANUFACTURING, INC.,

                Plaintiff,

                                          CIVIL CASE NO. 08-10425

v.                                          HON. MARIANNE O. BATTANI

PROPRIDE, INC., SEAN WOODRUFF, and
JAMES C. HENSLEY,

                Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND**
**DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

      Before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. No. 18),

Defendant Hensley's Motion to Dismiss (Doc. No. 9), and Defendants Propride and Woodruff's

Motion to Dismiss (Doc. No. 13).  Plaintiff Hensley Manufacturing, Inc., has filed suit against

Defendants for statutory and common law trademark infringement, unfair competition, breach of

contract (against Hensley), misappropriation of trade secrets (against Woodruff and Propride)

and tortious interference with a business relationship.

      Plaintiff, the manufacturer of a trailer hitch called the "Hensley Arrow", is seeking to

preliminarily enjoin all Defendants from using Defendant James Hensley's name in connection

with the sale or advertising of their product.  Defendants are seeking to dismiss Plaintiff's

complaint for failure to state a claim; Defendant Hensley argues that under the plain terms of the

contract between him and Plaintiff there has been no breach, while Defendants Propride and Woodruff (the "Propride Defendants") argue that Plaintiff has alleged no acts of trademark infringement. For the reasons stated below, the Court grants the motions to dismiss and denies the motion for preliminary injunction.

## II.      STATEMENT OF FACTS

Plaintiff is a manufacturing company operating out of Davison, Michigan, and is engaged in the business of making trailer products. Defendant James Hensley is an inventor and designer. Defendant Sean Woodruff was employed by Plaintiff as a sales and marketing manager until 2007, when he left and formed Defendant Propride. Defendant Propride is a manufacturing company operating out of Grand Blanc, Michigan, and engaged in the business of making trailer products.

In 1994, Plaintiff and Defendant Hensley entered into a Licensing Agreement (referenced in Plaintiff's complaint, and provided by Defendant Hensley), which allowed Plaintiff to manufacture and sell Defendant Hensley's trailer hitch design in exchange for cash, shares in Plaintiff, and a continuing royalty.[1] Plaintiff sold Defendant Hensley's trailer hitch under the name "Hensley Arrow" or "Arrow". Plaintiff registered a trademark for the name "Hensley" and has also trademarked the "Hensley Arrow" graphic, both in 2003.

Defendant Hensley split with Plaintiff in 2007, and designed a new trailer hitch. He then licensed the new design to Defendant Propride. Defendant Propride markets this hitch as the

---

[1] Plaintiff claims that Plaintiff purchased the ongoing trailer hitch business of Defendant Hensley's company. Defendants deny this, and Plaintiff provides no documentary evidence.

"Propride Pivot Point Projection Hitch".  In advertising the hitch, Defendant Propride has used Defendant Hensley's name to describe his relationship with the company.

The uses that Plaintiff cites are as follows:

• Print and mail advertisements in which Defendant Propride says: "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins.  That man is Jim Hensley.  Now he has done it again and improved the performance of his old design."

• An advertisement that states: "The ProPride hitch was designed and patented by Jim Hensley."

• The website of Propride includes a section on "The Jim Hensley Hitch Story", which explains Defendant Hensley's background and relationship to Defendant Propride.

• An eBay.com listing which was entitled "Used Hensley Arrow Hitch?  Buy New J. Hensley Design".

• An internet domain name – www.jimhensleyhitch.com – which redirects users to Defendant Propride's website.

Plaintiff filed suit against Defendants for (1) statutory and (2) common law trademark infringement, (3) unfair competition resulting from the confusion of the trademarks, (4) breach of contract (against Defendant Hensley), (5) misappropriation of trade secrets (against the Propride Defendants) and (6) tortious interference with a business relationship.

Defendant Hensley filed a motion to dismiss, claiming that he has not violated any term of the contract referenced in Plaintiff's complaint, and that Plaintiff failed to state a claim against

him for trademark violation, tortious interference, unfair competition or misappropriation of trade secrets, as the facts plead establish violations only as to the Propride Defendants.

The Propride Defendants filed a motion to dismiss, claiming that the use of Defendant Hensley's name is not a trademark infringement, and that Plaintiff has failed to state a claim for the unfair competition, misappropriation of trade secrets, and tortious interference claims.

Plaintiff subsequently filed the present motion for a preliminary injunction on the trademark infringement claim..

## III.  STANDARDS OF REVIEW

*Motion to Dismiss Standard*

Fed. R. Civ. P. 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief may be granted."  "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true.  Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996).  The Sixth Circuit has made it clear that "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).  When faced with a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a district court,

> . . . must construe the complaint in the light most favorable to the plaintiff,
>
> accept all factual allegations as true, and determine whether the plaintiff

undoubtedly can prove no set of facts in support of his claims that would

entitle him to relief. Meador v. Cabinet for Human Resources, 902 F.2d

474, 475 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d

145 (1990). A complaint need only give "fair notice of what the

plaintiff's claim is and the grounds upon which it rests." Lawler v.

Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990) (quoting Conley v. Gibson,

355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A judge may not

grant a FED. R. CIV. P. 12(b)(6) motion to dismiss based on a disbelief of

a complaint's factual allegations. Id.

In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993). Accordingly, to

determine whether a complaint should be dismissed for failure to state a claim under Rule

12(b)(6), this Court must examine the applicable substantive law and the facts alleged in the

plaintiff's complaint.


*Preliminary Injunction Standard*

To determine whether to grant a preliminary injunction, a district court must consider: (1)

the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable

harm absent the injunction; (3) whether granting the injunction will cause substantial harm to

others; and, (4) the impact of an injunction upon the public interest. Deja Vu of Nashville, Inc.

v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir.2001). These four

considerations "are factors to be balanced, not prerequisites that must be met." Hamad v.

Woodcrest Condo. Ass'n, 328 F.3d 224, 230 (6th Cir. 2003).

# IV.    ANALYSIS

*1) Trademark Infringement and Unfair Competition*

Plaintiff's claims of trademark infringement under the Lanham Act, trademark infringement under MICH. COMP. LAWS § 18.638, and unfair competition under 15 U.S.C. § 1125(a)[2] all employ the same "likelihood of confusion" test.  Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997) (employing the "likelihood of confusion" standard to a federal trademark infringement claim); The Sports Authority v. Abercrombie & Fitch, 965 F.Supp. 925, 934, fn 5 (E.D. Mich. 1997) (holding that "trademark infringement under Michigan common law is governed by the "likelihood of confusion" standard); Champions Golf Club v. The Champions Golf Club, 78 F.3d 1111, 1123 (6th Cir. 1996) (holding that "[a]s in an action alleging infringement of a mark, likelihood of confusion is the essence of an unfair competition claim").

The essence of this standard is "whether the Defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."  Big Daddy's, 109 F.3d at 280 (6th Cir. 1997).  The Sixth Circuit has held that "whether there is a likelihood of confusion depends on consideration of eight factors:

> 1. the strength of the plaintiff's mark;
>
> 2. the relatedness of the services;
>
> 3. the similarity of the marks;
>
> 4. the evidence of actual confusion;
>
> 5. the marketing channels used;

---

[2]  Plaintiff has plead this claim as "False Designation of Origin" under 15 U.S.C. § 1125.

6. the likely degree of purchaser care;

7. the defendant's intent in selecting the mark; and

8. the likelihood of expansion of the product lines."

Champions Golf, 78 F.3d at 1116.  These factors are not mathematically precise or equally weighted, but are to be used as a guide in determining whether "relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." Homeowners Group, Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir.1991).

The Lanham Act provides for several fair use defenses against a claim of trademark infringement.  See 15 U.S.C. § 1115(b).  The relevant statutory defense here is the allowance for the descriptive use of individual names.  15 U.S.C. § 1115(b)(4) ("the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin").  Fair use is a defense against both trademark infringement and unfair competition under 15 U.S.C. § 1125(a).  See, e.g., New York Mercantile Exchange v. IntercontinentalExchange, 389 F.Supp.2d 527, 545 (S.D.N.Y. 2005) ("Both 32(1) and 43(a) are subject to a defense of 'fair use.'").

Applying the eight-factor test, it is clear that Plaintiff's alleged marks of "Hensley" and "Hensley Arrow" are strong and distinctive marks.  See Little Caesar Enters. v. Pizza Caesar, 834 F.2d 568, 571 (6th Cir.1987) ("Fanciful and arbitrary marks are considered to be the 'strongest' or most distinctive marks").  Any party attempting to use them as labels or trade names in the trailer or trailer hitch business would very likely cause actual confusion among the

relevant customer base, and such use would likely constitute trademark infringement. However, Defendants are not being accused of marking their goods with Defendant Hensley's name – the extent of the use is in advertising his connection with the company.[3]

The use of an individual's name in a descriptive sense, as opposed to the use as a trade name, is acceptable under trademark law. Compare Madrigal Audio Laboratories, Inc. v. Cello, Ltd., 799 F.2d 814, 822 (2d Cir. 1986) (finding no infringement when Defendant advertised its relationship with an inventor whose name was a registered trademark owned by Plaintiff) with E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291-92 (9th Cir. 1992) (finding infringement where Gallo family name was used as a trade name to mark product). The First Circuit's analysis in Cello is instructive, finding that "even when a personal name has become a trade name it continues to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated" and the fair use exception applies. Cello, 799 F.2d at 822.

The Court will not engage in finding of fact regarding who is the rightful owner of the "Hensley" or "Hensley Arrow" marks, or what the scope of that ownership entails.[4] The Court

---

[3] Defendant Propride's first argument – that the use is not "in commerce" because it is not part of the name or packaging of the product – is patently incorrect, as the use in advertising is clearly "in commerce." Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., 153 F.2d 662, 667 (1st Cir. 1946) (holding that "the essential wrong of trade-mark infringement, the appropriation of the good will of another's established mark, may be effectively accomplished by advertising matter associating that other's distinguishing mark with the product of defendant").

[4] Defendants and Plaintiff argue over the validity of Plaintiff's registration, the expiration of their patents, and the specifics of Plaintiff's business relationship with Defendant Hensley.

will, as required, "construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true." Meador, 902 F.2d at 475.

Even assuming that Defendant Hensley did sell the right to his name, "[w]hen an individual sells no more than the right to use his name as a trade name or trademark he is precluded only from using his personal name as part of that of another company or on other products, and not from taking advantage of his individual reputation (as opposed to the reputation of the company which bore his personal name as a trade name) by establishing a company which competes against the purchaser of the trade name, *or from advertising, in a not overly intrusive manner, that he is affiliated with a new company*." Cello, 799 F.2d at 823 (emphasis added). It is exactly this that Defendants are accused of, and therefore their use of Defendant Hensley's name falls under the "fair use" exception to the rule,[5] and Plaintiff's claims of infringement and unfair competition are defeated.

Thus, Plaintiff has failed to state a viable claim for both statutory and common law trademark infringement, and for unfair competition under the Lanham Act. Defendants' motions to dismiss are granted as to these claims, and they are dismissed.

---

The Court does not need to resolve these factual conflicts to decide the motion.

[5] The only use of "Jim Hensley" by Defendants that is somewhat questionable is the www.jimhensleyhitch.com website. However, the URL (1) uses Defendant Hensley's whole name, distinguishing it from Plaintiff's product, (2) relates directly to Defendant Hensley's affiliation with Defendant Propride and his hitch designs, and (3) does not attempt to link Plaintiff with Defendant Propride (there is no mention of anything to do with Plaintiff on Defendant Propride's website).

*2) Breach of Contract*

As a threshold matter, in deciding this 12(b)(6) motion, the Court may review and consider contracts that are referenced in a party's pleadings, even if they were not introduced by the party bringing the action.  See Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997) (finding that "a defendant may introduce certain pertinent documents if the plaintiff fails to do so ... [and] they are referred to in the plaintiff's complaint").

In order to establish a claim for common law breach of contract in Illinois, a plaintiff must allege and prove the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.  Henderson-Smith & Assoc., Inc. v. Nahamani Family Service Center, Inc., 752 N.E.2d 33 (Ill. App. 2001).

Plaintiff's complaint alleges four discernible contractual obligations:

• (1) the sale of Defendant Hensley's business as a going concern, in February 1994 (Pl. Compl. at ¶ 18);

• (2) the agreement that a new corporation would be formed and the company's hitches would be known as the "Hensley" hitch or the "Hensley Arrow", in February 1994 (Id. at ¶ 18);

• (3); the agreement that Plaintiff would use the trademarks "Hensley" and "Hensley Arrow", in February 1994 (Id. at ¶ 19); and

• (4) the agreement that the "Hensley" trademark was the property of Plaintiff and Defendant Hensley would not "undertake any action to misappropriate or dilute

the Hensley trademark", established by conduct over the course of 10 years (Id. at ¶ 38).

Defendant Hensley's primary argument – that the only contract at issue is the February 1994 license agreement – is rebutted by Plaintiff's complaint. Plaintiff alleges both a February 1994 agreement (or agreements) and an oral agreement ("established by conduct") relating to the trademarks at issue in this suit.

However, it is also clear that Plaintiff has not alleged a breach of any term of the February 1994 agreement (or agreements) that it references in ¶ 18-19. Thus, Plaintiff's entire breach of contract claim rests on a violation of the alleged oral agreement requiring Defendant to abstain from diluting or misappropriating Plaintiff's trademark.

To succeed on this claim, Plaintiff would have to prove that Defendant Hensley diluted or misappropriated their trademark – the same exact issue as in the failed trademark infringement claim. According to the analysis in Part IV-I, <u>supra</u>, the use of Defendant Hensley's name qualifies as "fair use" even accepting all of Plaintiff's plead facts as true. Plaintiff's alleged trademarks were therefore not misappropriated. <u>Innovation Ventures, LLC v. N2G Distributing, Inc.</u>, 2008 WL 1735371 (E.D. Mich. 2008) ("misappropriation" is the same as "infringement" in a trademark claim). As for a claim of dilution, the Court applies a more stringent standard than in the infringement context, <u>Autozone v. Tandy Corp.</u>, 373 F.3d 786, 806 (6th Cir. 2004) (holding that a "higher degree of similarity than is necessary in infringement claims"), and the finding of "fair use" likewise defeats any claim of dilution. <u>Herman Miller, Inc. v. A. Studio S.R.L.</u>, 2006 WL 2456218 (W.D. Mich. 2006) (holding that the concept of fair use is applicable in cases of alleged dilution).

Proving Plaintiff's breach of contract claim would require a successful trademark infringement claim. Even accepting all of the facts plead in Plaintiff's complaint as true, Plaintiff cannot successfully state a claim for trademark infringement, and therefore Plaintiff's breach of contract claim fails, too. The motion to dismiss is granted in favor of Defendant Hensley on this claim, and it is dismissed.

### 3) The State Law Claims

Plaintiff's remaining claims – tortious interference and misappropriation of trade secrets – are brought under state common law, with supplemental jurisdiction under 28 U.S.C. § 1367. As the Court has dismissed all of Plaintiff's federal law claims, the Court dismisses the remaining state law claims. See, e.g., Hankins v. The Gap, Inc., 84 F.3d 797, 802-03 (6th Cir. 1996) (holding that when all federal claims have been dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial ... the state claims should be dismissed as well").

*4) The Preliminary Injunction*

In light of the Court's disposition of the motions to dismiss, the motion for preliminary injunction is now moot, and is denied. See Great Lakes Consortium v. Michigan, 480 F.Supp.2d 977, 986 fn 4 (W.D.Mich. 2007).

## V.      CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant Hensley's Motion to Dismiss is **GRANTED**, Defendants Woodruff and Propride's Motion to Dismiss is **GRANTED**, and Plaintiff's Motion for Preliminary Injunction is **DENIED**. Plaintiff's complaint is hereby **DISMISSED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: June 19, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK